# BENJAMIN DORE, AND OWEN HANNIGAN, INTERVE- NOR *v.* JOSEPH SELLERS, E. L. GOLDSTEIN, AND ADOLPH ZURN.

LIEN OF CONTRACTOR ON BUILDING.—The statute gives one who has entered into a contract in writing to construct a building a lien on the same as security for the payment of the money becoming due to him according to the terms of the contract, but this lien cannot be enforced for an amount exceeding the sum to become due the contractor.

CONTRACTOR HAS NO LIEN EXCEPT FOR MONEY TO BECOME DUE.—If a contractor engages to construct a building in consideration—in whole or in part—of a debt then due from him to the employer, or of a sum paid him by the employer upon the execution of the contract, that portion of the contract price represented by the debt or the advance payment cannot become a lien upon the building.

LIEN OF EMPLOYÉS OF CONTRACTOR.—The employés of the contractor have no lien on the building as principals, and cannot acquire a lien on the building independent of the one existing on the original contract, which they may enforce to the amount due them, so that the same does not exceed the sum for which the contractor has a lien.

LIEN OF EMPLOYÉS OF SUB-CONTRACTOR.—If the contractor has paid the sub-contractor according to the terms of his contract with him, and has not made premature payment, the employés of the sub-contractor are not entitled to demand anything from the contractor or employer.

SAME.—The employés of the sub-contractor cannot intercept any money due from the employer to the contractor, nor can they enforce the lien of the contractor for any of the same, beyond what is due from the contractor to the sub-contractor at the time.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*J. McM. Shafter*, for Appellants.

The question presented is simply this : Can the material man and laborer go upon the house, superstructure, etc., directly, to the extent of the contract price due, or are they subject to all the conditions which may be created by the account between the contractor and his sub-contractor ?

The eighteenth section of the Mechanics' Lien Act provides that the procurement of lumber to be used in erecting buildings with the intent to apply the same to other purposes, is an offense punishable as a crime.   The fraud consists in inducing

one to part with his property upon the faith that it will be incorporated into a permanent and valuable form of real estate, which the builder can resort to as a reasonably certain source of payment.

Section four makes the lien of the material man operative from the time the materials were furnished. At this time no work would have been done, no payments made nor due. The lien depends upon the fact that the lumber is furnished alone, and *not* upon the state of the accounts between the several parties. If it be conceded that the lien will be defeated by the non-application of the lumber for the purpose designed, still *this* case shows the lumber *was* so applied.

This intention of making the security of the material man absolute, is further shown by section sixteen. The lumber furnished is not attachable as the property of either the contractor or sub-contractor. It is regarded as a *trust to be executed exactly according to its terms*, and for the benefit of the material man.

No distinction is taken between the case of lumber furnished to a contractor and that furnished to a sub-contractor. *All* lumber furnished for the building is protected from attachment or execution against its "purchaser."

If the sub-contractor should have a recovery against him in favor of the contractor for breach of the building contract, lumber furnished for the building would be protected from an execution thereon. Why, then, should the vendor who sold this lumber charged with the trust be deprived of his pay and his lien, which is co-extensive with this trust, by the simple breach of the sub-contractor's contract?

Section thirteen secures the rule of superiority and priority to us, as against *both* Giblin and Zurn & Hannigan, and provides for the marshalling and application of the contract price, first to us, second to the sub-contractor, and third to the original contractor. The intention of observing this order is involved in section twenty-five. The limitation of time to make claim is thirty days as to these "primary" claims, while

to those last in order of payment sixty days is allowed to initiate proceedings to enforce the remedies of the statute.

The foregoing ideas we think are sustained fully by *Cahoon* v. *Levy*, 6 Cal. 295; *Soule & Page* v. *Dawes*, 7 Cal. 574; *McGreary* v. *Osborne*, 9 Cal. 119; *Crowell* v. *Gilmore*, 13 Cal. 56; S. C. 18 Cal. 370; *McAlpine* v. *Duncan*, 16 Cal. 126; *Bowen* v. *Aubrey*, 22 Cal. 566.

*E. B. Mastick*, for Respondent.

The sub-contractor is entitled to recover only upon performance of sub-contract. All persons claiming through a sub-contractor can only claim that to which he would be entitled. The material man in this case derives his rights through the sub-contractor; the power of the sub-contractor is limited to the terms of his contract; he can confer no greater power than that which he has. The material man may come between the sub-contractor and the contractor, and intercept that to which the sub-contractor would be entitled; but how or by what right could he get more?

The question as put in appellant's brief, I think is not the question in this case. Has the material man who supplied material to a sub-contractor, a lien on the house, etc., for the material thus furnished, in case the sub-contractor fails to perform his contract, and has, up to the time of the notice to the owner, been paid all that was due of the money earned under his contract, and when all the money which is to become due under the original contract remains to be earned?

The appellant says that " the material man is entitled to a lien, etc., and the only limitation to the right is, that the owner of the realty shall not pay more, etc., than what he agreed to pay." Also: " The limitation of this right as against the defendants is, that they shall not be made to pay more than they have agreed."

Again: " The lien to be pursued is measured by the ' original contract,' for the reason, as we have seen, that Sellers and Goldstein ought not to be charged beyond their contract."

Now, "all that was due" has been paid; all that was to become due "remained to be earned." There was no money due at the time of the notice. "All that was then due," that is, had been earned, had been paid to Zurn and Hannigan, and that which was to become due, "remained to be earned." It was afterwards earned by Giblin, and earning it, he was entitled to it. Neither the material nor labor of the appellants earned it, but the material and labor of Giblin did.

If, then, the liability of the owner is bounded by the amount named in the contract as the price, how are the appellants to recover? (*Bowen* v. *Aubrey*, 22 Cal. 566.) If any other rule was to prevail, then the owner would be liable for all materials and labor, regardless of the contract price.

By the Court, RHODES, J.

This action is brought under the Mechanics' Lien Act of 1862. Sellers and Goldstein, being the owners of a certain lot in San Francisco, contracted in writing with Giblin for the construction of two houses for a price named, payable in instalments. Giblin contracted in writing with Zurn and Hannigan to do the carpenter work on the buildings and furnish the materials for the work. On the 12th of January, 1863, the sub-contractors gave notice to the contractor and the architect, that they could not complete their contract, and they then abandoned the work. The contractor, up to that time, had paid to the sub-contractors all that was due them for work done and materials furnished by them, and it is not alleged and does not appear that a further sum was to become due to them, for work done or materials furnished before that time. On the 15th of January, 1863, the plaintiff served upon the owners of the premises and the contractor, a notice of his claim as a material man, for lumber, etc., furnished to the sub-contractors for the erection of the houses, the bill for which was on the 13th of January, 1863, certified by the sub-contractors to be correct. Upon the sub-contractors abandoning their contract, the contractor (Giblin) proceeded to complete

the buildings, including that portion of the work uncompleted under the sub-contract; and at the time they abandoned their contract five thousand eight hundred and sixty dollars, as appears by the stipulation of the parties, "remained to be earned and paid upon the original contract as between the original parties (said Giblin, Goldstein and Sellers,) in two instalments—one of fifteen hundred dollars, and the last of four thousand three hundred and sixty dollars—to be paid on completion of the job. Fully completed March 20, 1863." The plaintiff sued to enforce his lien upon the lot as a material man, and he makes as defendants the owners of the lot and the sub-contractors.

The intervenor's position is similar in all respects to that of the plaintiff. The defendants had judgment in the Court below.

The appellants state the question involved in the case as follows: " Can the material man and laborer go upon the house, superstructure, etc., directly to the extent of the contract price due, or are they subject to all the conditions which may be created by the account between the contractor and his sub-contractor?" and in solving this question they lay down the proposition that, under the Mechanics' Lien Law, the material man and laborer are entitled to a lien upon the premises, as principals, subject to the limitation only, that the amount of such lien shall not exceed the price agreed to be paid by the owner of the real estate to the original contractor for the whole work. If this proposition can be maintained, the question must be answered in the affirmative.

The securing of liens to certain classes of contractors, mechanics and material men, for the value of the labor and materials furnished by them in the construction or repair of buildings and certain other structures, has been a favorite subject of legislation in this State, and remedies have been afforded to them, differing in material respects from those granted to other classes performing apparently equally meritorious services. The Act of 1862, which went to a greater extent in giving liens where none had been directly contracted for by

the parties, superseded all former statutes on that subject. It is provided by section one that original contractors shall have a lien to the extent of the original contract price, and that such contract shall operate as a lien in favor of the sub-contractors, laborers and material men; and it is declared in section three, that the lien created by such contract " shall be and inure primarily to the benefit of all persons who, as employés of the original contractor, or [of] his assigns, shall perform work and labor, or furnish material for the construction or repair of such building," etc.; and that "after the payment of such material men, workmen and laborers, such lien shall inure to the benefit of the original contractor or his assigns." Sections one, three, and seventeen, are the only ones in the Act that declare the liens that the several classes of persons may acquire under a contract for the construction of a building, the other sections having relation to that general subject, prescribe the manner of acquiring, enforcing and satisfying such liens.

The statute grants to the contractor who has entered into a contract in writing to construct a house, a lien upon the house while it is being constructed, and for a limited time after its completion, as security for the payment of the money becoming due to him, according to the terms of the contract. Although the language of section one is that he shall have a lien " to the extent of the original contract price," it could not have been the intent of the Legislature, and it certainly was not within their power to give a lien for an amount exceeding the sum to become due to the contractor. For if the contractor engages to construct the house in consideration, in whole or in part, of a debt then due from him to his employé, or of a sum of money paid to him by the employer upon the execution of the contract, that portion of the original contract price represented by the debt or the advance payment, could not become a lien upon the house. The amount of the contract price which is to be paid to the contractor becomes a lien upon the house as the same falls due according to the terms of the contract, and it is this lien that

75

the statute declares shall inure primarily to the benefit of the employés of the contractor. No lien is provided for them by the statute other than such as arises under and flows from the original contract, and no other or greater lien could by legal possibility inure to their benefit, without subjecting the employer to a contract that he never made. The law does not create one lien for the benefit of the contractor and another for the benefit of his employés, but the lien arises, as the contract is performed according to its terms, for the benefit of both contractor and employés; and the law in enforcing the lien and distributing the sum realized, prefers the employés to the contractor—in other words, the law permits the employés to intercept a portion or all of the sum that was agreed to be paid to the contractor. They have this right, not for the reason that the employer's property has been benefited by the labor or materials furnished by the employés, but because they have furnished the labor or materials for the contractor, to whom the law has granted a lien, for the amount which became due to him under the contract, in consequence of their labor and materials. It therefore necessarily follows that the employés cannot acquire a lien upon the house independent of the original contract, and that they are not entitled to a lien as principals, though entitled to be first paid out of the moneys becoming due under the contract, and which have been earned by the application of their labor or materials.

Are the employés of the sub-contractor subject to all the conditions that may be created by the account between the contractor and sub-contractor? If the account is consistent with the terms of the contract entered into between the contractor and the sub-contractor, and payment has not been prematurely made, there can be no doubt that the employés of the sub-contractor are not entitled to demand from the contractor or employer an amount exceeding the sum then due the sub-contractor, according to his agreement with the contractor. (See *Bowen* v. *Aubrey*, 22 Cal. 566, and cases cited.) The contrary doctrine cannot be true, unless it can be demon-

strated that a party who has fully complied with the terms of his agreement can be held responsible for an amount exceeding the amount he agreed to pay.

The mere fact that a portion of the work was done, and the materials furnished by the employés of the sub-contractor, could not entitle him to receive, either directly, or indirectly through payments to his employés a greater sum than he would have been entitled to had he personally performed all the labor and furnished the materials, in performance of the sub-contract. The action seems to have been brought in view of that principle, for it is alleged in the complaint that an amount exceeding the plaintiff's demand was then due the sub-contractors, on their contract with the original contractor, who is entitled to all the residue of the original contract price, that he has not agreed to pay to the sub-contractors, and the contractor is not made a party to the suit. Under the principle now contended for by the appellants, if the sub-contractors had purchased of the material man, on credit, a bill of lumber, to be used by them in performance of their contract, and had thereupon abandoned the contract and appropriated the lumber to other purposes, the original employer would be held liable for the price of the lumber, and he, upon settlement with the contractor, would be permitted to deduct that sum from the contract price, although the contractor, in performance of the contract, had been obliged at his own expense to furnish the full amount of lumber required for the building. The statute, for the protection of employés, holds the payment made before it fell due, according to the terms of the contract, void as against the unsatisfied claims of the employés; but if payment has been made according to the terms of the contract, and before the material man or laborer has given notice of his claim according to law, we find no provision in the statute holding the employer or the original contractor liable for the payment of such claim, and certainly there is no rule of the common law leading to such a result. If in such case the contractor is not indebted to the sub-contractor he is not responsible for the labor or materials furnished to the sub-

contractor by his employés; and the employés not being entitled to intercept it as a portion of the amount due or becoming due to the contractor, cannot have a lien upon the house for their payment. Their only remedy in such case is against the sub-contractor; and if they are not willing to trust to his personal responsibility, they must see that his contract is adequate, as to the price and terms, to afford them sufficient security.

Judgment affirmed.

Mr. Justice SHAFTER, having been of counsel, did not sit in this case.