[Filed June 24, 1886.]

## WHITTIER, FULLER, & CO. *v.* C. O. BLAKELY AND CHARLES LOGUS.

MECHANIC'S LIEN—SUBCONTRACTOR—NOTICE OF LIEN.—Under a statute providing that a subcontractor desiring to secure a mechanic's lien shall give to the owner of the building a notice of the nature and extent of his claim "over and above all payments and offsets," it is not essential that the words quoted shall be contained in the notice. It is sufficient that notice be given of the amount of the claim.

SAME—DISPUTED CLAIMS—DEPOSIT WITH COUNTY CLERK.—The deposit with the county clerk in case of disputed claims, provided for by section 4 of the mechanic's lien law (of October 28, 1874), is a privilege given the employer, by making which he can discharge *pro tanto* the lien given by section 1; and it is optional with him whether he makes the deposit or not.

SAME—MATERIAL-MAN.—The lien arising in favor of an original contractor furnishing work and materials used in the construction of a building inures to the benefit of a subcontractor who supplies such materials, whenever he gives the employer the written notice prescribed by the act, which he can enforce whenever the respondent fails to pay the claim or make the deposit with the county clerk, if the claim be disputed by the contractor.

SAME—BUILDING CONTRACT—PAYMENT IN INSTALLMENTS.—Where, by a building contract, the employer is to pay in installments as specified

portions of the work are completed, and the contractor so far progresses with the work as to entitle him to some of the installments, a material-man who has furnished material for the work so done, and otherwise complies with the provisions of the act, is entitled to a lien, notwithstanding the fact that the contractor afterwards fails to complete the building and abandons his contract.

LIEN—WHEN IT ATTACHES—FILING NOTICE WITH CLERK.—It is not essential that the account prescribed by section 18 of the lien law should be filed with the county clerk before bringing suit upon it. The lien attaches upon delivery of the material and service of notice of the lien upon the employer. The filing of the account is required to prevent the lien from lapsing.

MULTNOMAH COUNTY. Plaintiff appeals. Decree for plaintiff.

*Charles H. Carey,* for Appellants.

The cases decide that where there is an account consisting of debts and credits, a claim for a " balance due" is not sufficient; but here the proof is clear, and the notice itself shows that the claim is not for a balance; but for a certain sum which is wholly due, and in no part paid. In such case, it is not necessary to set forth the items of the account. (*Gilman* v. *Gard,* 29 Ind. 291; *Lee* v. *Burke,* 66 Pa. St. 336; *Heston* v. *Martin,* 11 Cal. 41; *Brennan* v. *Swasey,* 16 Id. 140; S. C., 76 Am. Dec. 507; *Selden* v. *Meeks,* 17 Id. 128.) It has been decided in a recent case in Massachusetts that the language of the statute need not be followed. It is sufficient if the certificate in fact contains a just and true statement of the account, not willfully or knowingly inaccurate. (*Gilbert* v. *Fowler,* 116 Mass. 375.) And it is so decided elsewhere. (*Hobbs* v. *Spiegelberg,* 5 Pac. Rep. 529; *Bank of Charleston* v. *Curtiss,* 46 Am. Dec. 325; *Kelly* v. *Brown,* 20 Pa. St. 446.) The earning of a specified sum by the contractor by the completion of a specified portion of the work creates a vested right which could not be overthrown by a subsequent abandonment by the contractor.

(*Schwartz* v. *Saunders*, 46 Ill. 18; *Bank of Pennsylvania* v. *Gries*, 35 Pa. St. 423; *Clark* v. *Busse*, 82 Ill. 515.)

*W. T. Burney* and *R. Williams*, for Respondent.

The subcontractors and material-men are bound by the contract of the original contractor, and a failure upon his part to perform his contract will defeat all others. (*Henley* v. *Wadsworth*, 38 Cal. 356; *Herbert* v. *Herbert*, 57 How. Pr. 333; *Dingley* v. *Greene*, 54 Cal. 333; *Reeve* v. *Elmendorf*, 38 N. J. L. 125.) Plaintiffs must prove liability of the owner to the contractor before the lien can attach. (*Sullivan* v. *Brewster*, 1 E. D. Smith, 681; *Hauptman* v. *Halsey*, Id. 661, 668; *Haswell* v. *Goodchild*, 12 Wend. 373.) The contract must be performed, and non-payment of an installment is no excuse for non-performance. (*Malbon* v. *Berney*, 11 Wis. 107; *Smith* v. *Coe*, 2 Hilt. 365.) This suit, then, was premature, for the contract must be completed before any suit can be maintained, and before such a vested right exists in the lien as can be assigned. (*Cox* v. *Western Pacific R. R. Co.*, 44 Cal. 18; *Dingley* v. *Greene*, *supra*; *Blythe* v. *Poultney*, 31 Id. 233.) An omission in the notice to state that the amount is due " over and above," etc., is fatal. (*Davis* v. *Livingston*, 29 Cal. 283; 3 Pac. Rep. 635.) Section 18 of the act of 1874 provides that within thirty days after the completion of the building the claimant shall file with the clerk of the county where the same is situated, an account, sworn to by him, and also a description of the property upon which the lien exists, and upon failure to comply with the requirements of the section, the claimant shall lose his lien. Appellants filed such an account, together with a description of the *building and lots*, and not a discription of *this fund*. The complaint was filed one month previous to the time of the filing of this account and the description of the property, and of course contains no allegation of

the filing of such a paper. This allegation is material, and its omission is fatal to the complaint. (*Dalles Lumb. & Mfg. Co.* v. *Wasco W. Mfg. Co.*, 3 Or. 527; Id. 372; *Heltzell* v. *Langford*, 33 Mo. 396; Phillips on Mechanic's Liens, sec. 408.) And in case of failure to allege the fact, evidence *cannot* be heard thereon. (*Hicks* v. *Fulkerson*, 43 Cal. 515.)

THAYER, J. This appeal is from a decree rendered in a suit brought by the appellant to establish and foreclose a mechanic's lien under the act of 1874, to provide for liens of mechanics, etc. The suit was against the respondent and one C. O. Blakely.

It is alleged in the appellant's complaint that said Blakely, on the twenty-eighth day of August, 1884, entered into a contract with the respondent to construct for the latter a certain building on lots 5 and 6 in block 82 in the city of East Portland, which lots are at the north-west corner of Fourth and L streets in said city; that by the terms of the contract, Blakely was to furnish the material and construct the building in accordance with certain plans and specifications, and that the respondent was to pay him therefor in installments upon the completion of specified portions of the work; that the appellants, as material-men, sold to said Blakely for the building, and which was used in its construction, glass of the value of $428.72, which the latter agreed to pay; that by the terms of the original contract a certain payment of $1,512.50 was to be made to the said contractor, Blakely, when the finishing coat of mortar should be put on, and the cornices, cementing, and plumbing done; that said portion of said work was duly completed according to the provisions of said original contract, and duly accepted as such by said respondent, on the four-

teenth day of January, 1885; that prior thereto, and on the ninth day of January, 1885, the appellants gave written notice to the respondent of their claim for furnishing the glass, it having been furnished prior thereto, and that no other notice of any claim of any other person for work and labor done, or agreed to be done, or for material furnished, or agreed to be furnished, or for any other cause or thing whatsoever, had been given to said respondent on account of the construction and erection of said building, or was given to him prior to, or at the time, said payment became due; that said payment was sufficient to pay the appellant's said claim, but that the respondent refused to pay it.   The respondent filed an answer in which he denied the contract for building set out in the complaint, denied any knowledge of the appellant's said claim, and all the allegations of the complaint excepting the statement that no other notice of lien had been served upon him prior to the time said payment became due; and for a further answer alleged that the contract of August 28, 1884, was modified or superseded by another contract between the respondent and said Blakely, entered into October 3, 1884, and set out in full in two exhibits designated as "A" and "B," both of said contracts.   It is further averred in the answer that Blakely entered upon the premises and proceeded to do certain work and to furnish certain material, but that he unreasonably delayed the work, and on or about the first day of January, 1885, willfully abandoned it; that the respondent thereupon gave him notice to proceed therewith, and he failing to do so, relet the contract for finishing the building for $875; that prior to the abandonment, the respondent advanced to the said Blakely $6,050, and that by reason of the delay in the completion of the contract the pen-

alty provided therein was forfeited, and that the respondent was damaged in various ways by the contractor's failure to complete the building. The defendant Blakely made no answer to the complaint. The appellants filed a reply to the respondent's answer, in which they admitted the contracts set out in said exhibits A and B. Several other parties intervened, but it is unnecessary to refer to their various claims. The case was referred to a referee to take the testimony and find the facts.

It appears from the testimony that the said written notice of the appellants' claim was as follows:

PORTLAND, OREGON, January 7, 1885.

To Mr. CHARLES LOGUS.

We hereby give you notice that Mr. C. O. Blakely of East Portland, Oregon, has purchased of us material to the value of $428.78 for use in the construction of your building on the corner of L and Fourth streets in said city of East Portland, and that said amount is due and unpaid, and we hold you responsible for said amount.

Respectfully yours,

WHITTIER, FULLER, & CO.

By C. A. PLUMMER, Attorney in Fact.

This notice was served upon the respondent on the ninth day of January, 1885, after the appellants had made out and delivered a bill of the account to Blakeley and demanded payment thereof from him. It further appears from said testimony that the architect for the said building, on the tenth day of January, 1885, made out and issued a certificate which entitled the contractor Blakely to the said sum of $1,512.50, and accepted the portion of the work to be completed under the contract entitling the said contractor to such payment. The following is a copy of the said certificate:

No. 17.        PORTLAND, OREGON, January 10, 1885.
To CHARLES LOGUS, Esq.

I hereby certify that Mr. C. O. Blakely, contractor, is ,
entitled to the sum of $1,512.50, being fourth advance on
account of contract for Logus Block, East Portland.

$1,512.50.              . OTTO KLUMANN, Architect.

The following indorsements appeared on the said cer-
tificate:

Received payment for above as following:

| | | |
|---|---|---:|
| Per order of H. H. Hogue | . . | $500 |
| Per order of W. H. Moore | . . | 565 |
| Note of Charles Logus | . . | 400 |
| | | $1,465 |

Balance per cash, $57.
Balance, $47.50.

And below was written the name C. O. Blakely. It
also appears from the testimony that the appellants de-
livered the said material to said contractor, as alleged in
their complaint, and that no part of the claim had been
paid; and it further appears therefrom that some time
after the ninth day of January, 1885, the respondent
paid to the said contractor the sum of $360.

The respondent was a witness in the case, and testi-
fied upon his cross-examination that the indorsements
upon the said certificates were placed there by the archi-
tect Klumann, on the fourteenth day of January, 1885,.
and that the name C. O. Blakely was subsequently signed
thereto.   It further appears from the said testimony
that on said fourteenth day of January, 1885, said con-
tractor quit work upon said building, claiming that he
was forced to abandon the contract by the respondent's
refusal to make advances in accordance with its terms;
that while he worked upon the same he pushed it vigor-
ously.

It will be seen from an inspection of said contracts, as shown by said exhibits A and B, that the one of October 3, 1884, merely provided for putting up a second story on the L Street part of respondent's block, and to furnish all necessary carpenter-work, brick-work, and plastering, painting, and all necessary materials, except bricks and iron-work, according to plans, and conforming to the rest of the building, for the sum of $1,250, in four installments of $312.50 each, simultaneously with the four last payments to be made on the said contract of August 28, 1884. Those payments were to be twelve hundred dollars each, to be made as certain parts of the work were completed. The original contract was not otherwise changed. This made the said four payments specified in the original contract $1,512.50 each, instead of $1,200. The said original contract, the one of August 28, 1884, provided for five payments, and it appears that the one in question was the fourth payment in that contract and the third one in the contract of October 3, 1884. After the making of that payment, there was still another one of the same amount to be made upon the completion of the building, and it would seem that the work of constructing the said building had so far progressed at the time Blakely qui', that the unfinished portion was contracted by the respondent to be completed for $875.

The contract of August 28, 1884, provided that the work of building said structure should be completed on or before the fifteenth day of November, 1884; that the said contractor should furnish all the materials therefor, and that each of the payments, except the final one, should only be considered as advances on account, and not as an acceptance of the work done or material supplied, and that they should only be made upon the presentation to the owner by the contractor of a written

certificate from the said architect.    It was also provided
therein that for each and every day's delay in the per-
formance and completion of said work, after said fifteenth
day of November, 1884, there should be allowed and paid
by said contractor to the owner or representatives dam-
ages for such delay, if the same should arise from the
act or default on the part of the said contractor, in the
sum of twenty dollars for each and every day.    Such
amount to be deducted by the owner from any sum of
money which might become due to the said contractor
on account of such work.

The appellants on the trial introduced in evidence a
duly certified copy of a notice of lien, in accordance with
the provisions of said act of 1874, which was filed in the
office of the clerk of the county of Multnomah on the
fourth day of March, 1885, one month after the com-
mencement of the suit, and about twelve or thirteen days
after the building was furnished.   The question to be
determined herein is, whether the appellants had a lien
either upon the fund or the property of the respondent.
It is claimed by the respondent's counsel that the appel-
lants had no lien upon either, upon the grounds that
the notice served upon the respondent was not in accord-
ance with the requirements of the mechanic's lien act
referred to; that it could not have been upon the fund,
as it was not paid over to the county clerk as provided
by said act, and that it did not exist against the build-
ing and land upon which it was situated, for the reason
that it depended upon the lien of the contractor, and
that his lien failed in consequence of his abandoning
the work; and further, that appellants' suit to foreclose
their pretended lien was prematurely commenced.

The appellants' right and remedy in the premises be-
ing both statutory, a resort must be had to that source of
law to ascertain their nature and extent.   The first section

of said mechanic's lien act provides that all original contractors, etc., for the construction, etc., of any building, etc., shall have a lien upon the said material and upon the building, etc., for the work and labor done, or material furnished by each respectively, upon the terms, for the uses and benefits, and upon the trusts thereinafter mentioned, to the extent of the original contract price; and such contract shall operate as a lien in favor of all subcontractors, laborers, and material-men, who shall perform labor or furnish material for the erection, construction, alteration, or repair of such building, etc., to the extent of the original contract price. This lien is made by the second section of said act to extend to the land upon which the building is situated, and the third section gives it a preference over certain other liens. The fourth section provides that whenever, by the provisions of the original contract, the payments to an original contractor are to be made by installments, at specified times, on completion of specified portions of the work, or on completion of the whole work, it shall be the duty of every laborer, workman, or material-man, etc., prior to the time when such payment shall become due, to give written notice to the employer of the original contractor, of the nature and extent of his claim against the original contractor, etc., over and above all payments and offsets for work and labor done, or agreed to be done, or material furnished, or agreed to be furnished, for such construction or repair. It then provides for the employer's paying the claim, if the contractor shall admit its validity, when the installment falls due, or paying a *pro rata* where the installment is not sufficient, and for depositing in the office of the clerk. of the county a sufficient amount to pay such claims, or a *pro rata* where the contractor disputes them. And it further provides that the making of such payments or deposits

shall discharge the lien to the extent of such payments or deposits, and that any payments made by the employer to workmen or material-men, under the provisions of said act, should operate as a payment to the original contractor. Section 5 provides that no laborer, workman, or material-man, etc., shall have the benefit of a lien under the act, unless he shall give the notice required by the preceding section; and section 6 provides that no payment by any original employer to any original contractor, etc., made prior to the time when the same shall fall due under the terms of the original contract, shall be valid for the purpose of defeating or discharging any lien created in favor of any workman, laborer, or material-man, but shall be deemed fraudulent and void as against them. Section 7 provides that the lien of any party shall be forfeited in case such party presents a false claim. Section 8 provides that the lien shall operate and inure for the benefit of the original contractor, or his assigns, subject to the rights of material-men, etc., and that when their liens are discharged, he may proceed to the enforcement thereof, and that when any suit is commenced by material-men, etc., to enforce their liens, the rights and liens of such contractor may be settled and adjudicated in the suit. Section 9 provides for posting notice of lien by material-men, etc., when timely notice cannot be given the employer on account of his absence. And section 10 provides that "if the original contractor (employer) or his assigns shall fail or refuse to make such payment or deposit, as is provided for in section 4 of the act, or if he shall make such deposit to meet disputed claims, then any person or persons, and any number of claimants, having or claiming a lien, or the benefit of a lien, under the provisions of the act, may commence and join in an equitable action for the enforcement of their lien, either against the fund or against the property on

which the lien exists; . . . . the court shall proceed to hear and determine such suit, and decide the merits thereof and the rights and liens of the respective parties, as in other equity cases, and may direct the sale of the property on which the lien exists, and the distribution of the fund among the parties entitled to the same."

Under these various provisions of the act, the appellants insist that their claim became a lien upon the building erected, and that they have the right to enforce it against the fund arising out of the said installment or against the premises. The prayer of their complaint was for a judgment against the defendants in the suit, and that their lien against said fund in the hands of the respondent be enforced, and for general relief.

By the language of said section 4, it might be inferred that the payment or deposit of the said installment due by the employer was peremptorily required, but upon a close examination of all the sections referred to, it will, I think, be observed that such payment or deposit was only intended as a privilege to the employer, and that by making them he would be able to discharge *pro tanto* the lien given by the first section of the act, and that it was optional upon his part whether he would pursue that course or not. There can be no question that the appellants acquired a lien upon the building and premises when they furnished the said material, provided they gave the notice required by the provisions of said act. The first section secured a lien to the original contractor for the work and labor done and the materials furnished by him in the construction of the building, and the contract he made with the respondent to construct it inured to the benefit of the appellants, and secured a lien in their favor whenever they gave the written notice referred to, if it conformed to the said provisions. The provisions of said section 5 cannot be construed in any other

manner. The negation therein expressed that no laborer, etc., shall have the benefit of a lien unless he shall give the notice, implies an affirmation that he shall have such lien if he do give the notice.

It becomes important, then, to consider whether the said written notice of January 7, 1885, is such a one as provided for in section 4 of the act. The respondent's counsel contend that it is not, that it is defective in form and substance; that it does not contain the words "over and above all payments or offsets." But I do not think the statute necessarily requires that those words should be inserted in the notice. It says that a notice shall be given of the *amount* of the claim over and above all payments or offsets. And I would suppose that if the claimant had done so in fact, it would answer the requirement. Section 7 of the act, as has been shown, makes the presentment of a false claim in such a case, or the willful omission to allow all credits which may be justly allowable, a ground of forfeiture of the lien. The fact whether a claim is false or true must be ascertained by proof. The claimant's saying it was true does not make it so, nor, in this case would it make the matter more certain. The appellants say by the notice that the contractor had purchased of them material to the value of $428.78 and that said amount was due and unpaid. What stronger assurance could they have given him of the amount of their claim than this, aside from actual proof? The respondent had ample opportunity to verify the claim. He had only to inquire of the contractor, who alone was interested in the matter. It made no difference with the respondent how much the claim was, his liability was limited to the contract price of the construction of the building.

Again, the amount of the claim as stated in the notice was the amount as established by the proof. It was

the true amount " over and above all payments or off-
sets." It was not a false claim. Then why in reason
and justice should the appellants forfeit their lien? The
proposition, to my mind, is highly absurd. Several ad-
judications are referred to in the respective briefs of the
counsel, showing how similar provisions of statutes have
been construed in other states. I have not deemed it
necessary to collate the various authorities upon the sub-
ject, as I do not believe it deserved the searching scru-
tiny it has received from the courts. Such refinements
could more appropriately be resorted to in the inter-
pretation of penal codes than in the .construction of
mechanic's lien laws. If I am correct in the view I
have indicated, then the appellants acquired a lien upon
the said building and appurtenances when they gave the
said notice, and they became entitled to enforce it as
soon as the respondent failed to pay their claim, or de-
posit it, if disputed by the contractor, in the office of
the clerk of the county of Multnomah. The said tenth
section clearly gave such right. The lien of the appel-
lants was not independent of that of the contractors.
As was said in *Don* v. *Sellers,* 27 Cal. 594, " the law does
not create one lien for the benefit of the contractor and
another for the benefit of his employees; but the lien
arises, as the contract is performed according to its
terms, for the benefit of both contractor and employees;
and the law, in enforcing the lien and distributing the
sum realized, prefers the employees to the contractors.
In other words, the law permits the employees to inter-
cept a portion or all of the sum that was agreed to be
paid to the contractor. They have this right, not for
the reason that the employer's property has been ben-
efited by the labor or materials furnished by the em-
ployees, but because they have furnished the labor or
materials for the contractor, to whom the law has granted

a lien for the amount which became due to him under the contract, in consequence of their labor and materials."

The appellants having, under the facts and circumstances before referred to, acquired the character of lien described, it only remains to be determined whether or not they have lost it.   The respondent's counsel make the following points upon the question, viz.: "That the contractor must perform his contract, or there must be some act of the owner preventing the performance, amounting to a breach of it."   But in this case, the contractor had not, when the appellant's lien attached, broken his contract.   Nor did he ever break the contract for the performance of the specific work, for the completion of which the appellants furnished the material.   At that time it was subsisting.   The appellant's lien had attached and the contractor's subsequent acts could not divest them of their rights.   In *Shaver* v. *Murdock*, 36 Cal. 298, a case wherein the owner and contractor had made a subsequent contract affecting the rights of the subcontractors, Judge Sprague, in delivering the opinion of the court, says: " And the parties to such contract, as well the owner as the original contractor, are equally presumed and bound to know that, with reference to the entire work embraced in the original contract, persons occupying thereto the relation of subcontractors, laborers, or material-men, possess an interest in the money to become due the original contractor from the owner under such contract; with the right and privilege, under the statute, of securing and enforcing a lien upon the structure and premises to the extent of such interest, which no subsequent agreement or acts of the parties to the original contract can, without timely notice to or consent of such third parties, impair or divest."   The theory that the failure of an

original contractor to complete an entire structure will defeat the claim of a material-man who has furnished material to complete a specified portion of it, for which an installment has been earned and acknowledged by the owner, cannot, in my opinion, be maintained. It would be strange, indeed, if the legislature intended to provide that the contractor, by leaving a shingle off the roof, or a brick off a chimney, could defeat the lien of a subcontractor who had dug and bricked up the cellar for which a payment had accrued and been made to the contractor, in violation of a provision of the act, especially when it provided that the subcontractor should have a lien in such event. If the contract in this case had been entire, and no payment required to be made until its completion, the lien of the laborer or material-man would, doubtless, have to depend upon its entire performance; but not so where specified portions of the work were to be paid for as they were completed. In such case, the payment is required to be made to those who have contributed to the completion of such portion, if they give due and proper notice of their claims. The subsequent abandonment of the work by the original contractor will not affect their rights.

The next point taken by the respondent's counsel is, that the suit was premature, for the reason, they say, that the contract must be completed before it can be maintained, etc. What has already been said upon the former point will apply to this as well. The two are, in fact, the same. The proposition is correct when rightly applied. If the contract for the construction of the building is entire and incomplete, the lien will not mature until its completion. So also if the contract of the laborer or material-man is incomplete, it will not mature. Had the appellants made a contract to deliver material, they could not rightfully have claimed the benefit of a

lien until its completion. The cases cited in support of this point apply only to that condition of affairs. The one in 44 Cal. 18, merely holds that subcontractors, where their contract was entire, as it was held to be in that case, must complete it before they could enforce a lien. None of those cases are applicable in this.

Some objections have been made to the accounts filed by the appellants with the clerk of the county, under section 18 of the act. It is claimed that there is a mis-description of the property, and that the account was filed after the commencement of the suit. I think, upon an inspection of the account, it will be seen that the property is described with sufficient certainty. That it was filed after the complaint in the suit was filed, there can be no objection. The appellant's lien accrued by the delivery of the material and service of the notice of claim. In order, however, to prevent the lien from lapsing, the appellants were required by said section 18 of the act to file such an account. The compliance with that provision did not establish the lien. It merely continued it and kept it alive. The language of the section indicates that beyond question. "Every subcontractor, etc., who shall acquire any lien, etc., shall, etc., . . . . and in default thereof, shall lose his lien." This is the substance of the requirement, and it is to be performed within thirty days after the completion of the structure, whereas the suit provided by section 10 of the act may be commenced whenever the original contractor (employer) or his assigns shall fail or refuse to make such payment or deposit as is provided by section 4. The labor may have been performed, or the material furnished, and generally is, upon the faith of the installment to become due; and it would do violence to the language of the act to hold that his lien depended upon the completion of the entire edifice, or that its enforcement was

postponed until such completion. I think the appellants acquired a lien upon the property, and that, under the facts set forth in their complaint, and the general relief therein prayed, they are entitled to have it foreclosed.

LORD, J., concurs in the result.

WALDO, C. J., took no part in the decision of the case.