Mr. Justice Cox
delivered the opinion of the Court:
On the 9th of June, 1888, Hanson C. Walter entered into a written contract with Mrs. Young, the defendant, to build a house for her and complete it by December 1, following, for the sum of $6,063.91, to be paid in eight installments as the work progressed, and the contractor was to forfeit $5 for every day’s delay in completing the house beyond the time agreed on.
Mrs. Young paid six of- the installments, amounting to *52 $4,goo, when, on the 17th of December, sixteen days after the house was to have been completed, Walter abandoned the work, leaving the house unfinished and $1,163.91 of the contract price yet unpaid. It is admitted, by stipulation, that Mrs. Young, after Walter’s abandonment of the contract, paid $544.60 in order to complete the house according to contract.
This would leave $620.31 of the contract price unexpended.
• It is further admitted, that without negligence on her part she was unable to have the house completed until May 23, 1889.
If she be allowed to charge the $5 per day as liquidated damages for the delay, the balance of the price would be more than absorbed.
In the meantime, on the 17th of December, 1888, the day Walter abandoned his contract, the complainant Wm. Whelan filed his notice of lien for the sum of $492. He was followed by others, the claims of all amounting to .$2,315.53.
This bill was filed on the 9th of March, 1889, for all the alleged lienors to enforce the liens by a sale. It was dismissed as to Whelan and one other, Chappelear, whose claim was for $51.05, and who has died, but a decree rendered in favor of the rest for claims amounting to $1,772.53, and an appeal taken by both sides.
As far as we can gather from the printed record, Whelan’s claim must have been dismissed, because the proof showed that he had been working for Walter on various houses; had mixed his accounts all up together and received payments from him during the building of Mrs. Young’s house, which probably ought to have been credited to that work, but were not.
There is one question, however, common to all the claims.
• The broad question is, whether a sub-contractor who postpones filing his notice of lien until the principal part of the contract price has been paid, according to the terms of the contract, can, by filing his notice, assert a lien on the owneds property for his entire claim, although it may exceed in *53 amount what remains due under the contract. This will depend upon the time from which the lien is to attach and operate.
If we seek the meaning of the existing law by the usual test, i. e. by considering the old law, the mischief and the remedy, what do we find?
By the old law, as embodied in section 709, R. S. D. C., the sub-contractor’s remedy was to give notice of his claim to the owner and that he held said owner responsible, and he thereby acquired simply a formal claim against the owner, not to exceed, however, the amount due from him to his contractor at the time of the notice. What mischief, under this law, Congress intended to remedy one can only conjecture. In argument, it was claimed that the mischief was the possible combination between the owner and the builder to prevent the sub-contractor from receiving anything by so manipulating accounts that nothing would appear to be due when the sub-contractor’s notice should be given.
Assuming this to have been the mischief contemplated, the present case will illustrate the manner in which it is remedied by the act of July 2, 1884, which is the law now in force. That act declares (section- 1), that “ every building hereafter erected or repaired by the owner or his agent in the District of Columbia, and the lot or lots of ground of the owner upon which the same is being erected or repaired, shall be subject to a lien in favor of the contractor, subcontractor, material-man, journeyman and laborer, respectively, for the payment for work and materials contracted for or furnished for or about the erection, construction or repairing of such building, and also for any engine, machinery or other things placed in said building or connected therewith so as to be a fixture: Provided, that the person claiming the lien shall file the notice prescribed in the second section of this act: Provided, further, that the said
lien shall not exceed or be enforced for a greater sum than the amount of the original contract for the erection or repair of said building or buildings.”
*54 By the second section, the contractor or sub-contractor, etc., may file the notice of lien at any time during the construction or within three months after the completion of the building. In this case it appears that the contract between the defendant and Walter was dated June 9, 1888. A few days afterward and before the work was begun, Whelan, as sub-contractor, made his bid for the plumbing, according to the plans and specifications, at and for the sum of $492, which was accepted, and the work begun by him in the same month.
Now, if he had immediately filed his notice of lien, which he could have done under the law, Mrs. Young would have had notice of his claim; her property would have been subject to a lien for the whole amount of work to be done under the sub-contract; she could not have made any arrangement with the builder to the prejudice of the plumber, and the latter would have been perfectly protected, and at the same time Mrs. Young, the owner, would have known exactly how much of the money she had contracted to pay her builder ought to go to the sub-contractor, and would have paid this money to the builder with her eyes open and at her own risk. The objects of the law would have been entirely accomplished.
But the position taken by the complainant is, in substance, that if the notice of lien is not filed until after the completion of the work or after the principal part of the contract price has been paid in pursuance of the contract, still, it operates retroactively, so as to give a lien for the whole amount of the claim, as from the beginning of the tvork, making the payments that have been made in the meantime by the owner to his builder, though in good faith and in perfect accordance with his agreement, to be payments in his own wrong and at his own risk, as if they had been made with full notice and anticipation of the lien- or’s rights.
Now, this construction of the law, while it does promote one of its objects, viz., the protection of the sub-contractor, *55 in effect, defeats another,' which is the protection of the owner; because it would compel him to pay more than the contract price, against which he is intended to be guaranteed by the second proviso in the first section of the law. That this would be in contravention of the law, in this respect, was held in a somewhat similar case to the present, Doughty vs. Devlin, 1 E. D. Smith’s Rep., 636, where the court says: “The language is that the owner shall not be obliged to ‘pay for or on account of such house,’ etc., any greater sum or amount than the price stipulated in and by his contract. Now, if after the house is finished and paid for by the owner, according to his contract, and without any notice of claim being filed, a laborer or material-man may file such notice, have a lien and compel a further payment, the owner is obliged to pay for his house, in consideration of such lien, a greater amount than he contracted to pay.”
Is there anything in the law that requires us to hold that the lien of the sub-contractor or material-man is to be considered as binding and operative from a date prior to the filing of the notice? As a rule, it may be safely stated, that where rights or priorities are to be acquired' by making notices, conveyances or other instruments a matter of record, they operate only from the date of the record. In times past there were examples of a contrary rule, but any other rule would now be considered unjust, if not absurd.
At common law, a judgment had relation back to the commencement of the term and bound the property then owned by the defendant, though he may have parted with it before the judgment. But this was changed by the Statute of Frauds, which made the judgment operate only from the date when it was docketed.
So, under our old recording acts, if a deed of conveyance was recorded within six months after its execution it had relation back to the date of execution and would prevail over other deeds executed in the meanwhile; but this was so manifestly unjust and offered such plain opportunity for fraud that it was altered by act of Congress of later date, *56 which gives operation to such instruments, as to third persons, only from the date of their registration.
We may safely say that we ought not to construe any law as operating differently from the general rule above stated, unless we are compelled to do so by very plain language.
Now, our statute does not in terms declare that these liens shall operate from the commencement of the work. It does so, in effect, in a certain class of cases, by providing that these liens shall be preferred to all judgments, mortgages, deeds of trust, liens and incumbrances attaching subsequently to the commencement of the work. As against these, the liens do operate from the commencement of the work and have a retroactive preference and priority. The owner is forewarned that these liens may be filed at any time up to three months after the completion of the work and he shall not be allowed to forestall them by incumbering the property in the meanwhile.
But this is the utmost extent to which the-law goes, in giving to the lien a relation backward and a retroactive operation. And all this is entirely inapplicable to the relations between the builder land his sub-contractor or material-men. As to any preference between them the statute is silent, but inferentially we can determine how far such preferences must exist.
The owner has undoubtedly a right to bind himself to the builder to pay the contract price in installments as the work progresses. Building operations would otherwise _ be impossible. The builder is entitled, upon filing his notice, to a lien on the property for the whole contract price. Two persons, however, cannot have distinct liens for the same debt; and as the law also gives the sub-contractor a right of lien, it would seem to follow that upon filing his notice of lien he intercepts so much of the contract price as the builder is to pay him, and, to that extent, displaces the builder’s lien, or right of lien, and becomes lienor in his place. In this way and to this extent, he acquires a preference over the builder. But there is nothing in the statute which requires us to hold that a lien so acquired by the sub-con *57 tractor has a retroactive priority over the builder’s right to his periodical payments which matured before notice of lien was filed. The owner is forbidden to incumber the property to strangers to the prejudice of either his contractor or the latter’s sub-contractors, but he is not forbidden to make his periodical payments to his contractor, as he has agreed to do — for otherwise the work could not go on — unless such payments are arrested in advance by the notice of lien.
■As against the owner and the builder the law gives no backward relation to the lien of sub-contractor or material-man and there is nothing in the statute to take it out of the general rule, that the lien should operate only from the giving of notice on the record. And, unless constrained so to do by very explicit language, we certainly would not give to the statute an interpretation that would work such manifest injustice as that which is contended for.
If the lien had been given expressly from the date of filing the notice, but without any restriction as to amount, we would have had to consider the grave question how far such an enactment would be constitutional. But fortunately, as if to meet this very difficulty, the second proviso forbids the lien to be enforced for a greater sum than the original contract.
The idea was advanced in argument, with a slight show of authority for it, that the contract makes the builder an agent of the owner to bind his property by sub-contracts, express or implied.
We do not admit the justice of this view. There is no privity between the owner and the sub-contractor, and the rights of the latter as against the owner are purely statutory and do not grow out of any privity of contract. Otherwise the owner would be bound by every admission and declaration of the contractor in his dealings with his employes and sub-contractors, and would be committed to obligations which he could not anticipate, to persons whom he never heard of. The Court of Appeals of Maryland, in Treusch & O’Connor vs. Schryock et al., 51 Md., 162, very properly, as we think, rejects this theory of agency.
*58 Again it is sought to throw upon the owner the burden of protecting himself by exacting security from the builder and by detaining the price until he is satisfied that all the subordinate parties in interest are paid.
This seems wholly unreasonable. A very special and extraordinary privilege is given to sub-contractors and material-men, of burdening the property of a person with whom they have no privity of contract, upon the simple condition of filing a notice in the clerk’s office, which costs no time or trouble and saves the rights of all parties. Surely the burden ought to be upon them of asserting their statutory rights so diligently as to avert loss to anybody.
The sub-contractor necessarily knows that there is a contract and is put upon inquiry as to its terms. But the owner is not informed as to the existence of sub-contracts or as to dealings with material-men and laborers, and it would be imposing a most onerous duty on him to hold that he cannot make a payment to his builder without first canvassing the town to ascertain who have furnished materials or labor to his house, and convening them all, to see that his contractor does not withhold their dues from them. This would be equivalent to holding that he is bound to know and ascertain at his own risk who all these parties are before he receives any notice from them. It is inconceivable that any legislative body ever intended to make the operation of building so hazardous.
The statutes of the different States on the subject differ, and it is, therefore, not easy to find cases strictly analogous to the present; but we conceive the general propositions we have laid down to be sustained by the following cases: Carman vs. McInrow, 13 N. Y., 72; Doughty vs. Devlin, 1 E. D. Smith, 636; Dore vs. Sellers, 27 Cal., 588; Blythe vs. Poultney, 31 Cal., 233; Henley vs. Wadsworth, 38 Cal., 356; Rendon vs. Murray, 49 Cal., 185; Spalding vs. Thompson, 27 Conn., 373.

The decree is therefore reversed as to the liens which were sustained and affirmed as to the others.