## JARVIS ET AL. v. STATE BANK OF FORT MORGAN ET AL.

1. PUBLIC LANDS—RIGHT OF WAY.

The right of way for an irrigating ditch on the public lands of the United States vests only upon completion of the work and upon compliance on the part of the canal owner with the local laws, customs, etc., although it attaches as the ditch is constructed.

2. MECHANIC'S LIEN—MORTGAGE.

Appellees constructed a flume for the ditch company, which, though a part of the general system of the canal, was entirely disconnected at both ends from the other portions of the ditch as theretofore constructed. *Held*, that the liens of the appellees as to the flume itself are superior to the lien of a mortgage on the entire property executed before appellees' liens attached.

3. MORTGAGES—AFTER ACQUIRED PROPERTY.

Subsequently acquired property may become subject to the lien of a mortgage if apt words covering it are inserted in the instrument; but as the mortgage attaches to such property in the condition in which it comes into the mortgagor's hands, a mechanic's lien for work done and material furnished thereon after the execution of the mortgage takes precedence over the same.

4. MECHANIC'S LIEN—SUBCONTRACTORS.

Although the contractor fails to perform his agreement, subcontractors may be entitled to what the work done and materials furnished are

reasonably worth, after deducting any claims for damages for the nonperformance by the contractor, and to a lien to enforce payment.

*Appeal from the District Court of Morgan County.*

IN THE year 1889 The Bijou Reservoir & Canal Company was incorporated under the general incorporation laws of this state, for the purpose of building an irrigating canal in the counties of Morgan and Weld. In the month of July of that year it duly filed, in the office of the county clerk of the respective counties, its map and survey, showing the general route of the canal, and the statement required by section 1720 of the General Statutes of 1883 and the amendments thereto. See Session Laws, 1887, p. 314. Thereupon it proceeded with the construction and completion of the canal.

In the month of August, 1889, being in need of funds to pay certain indebtedness, and to complete the canal, this Canal Company borrowed of the Jarvis-Conklin Mortgage Trust Company the sum of $40,000, evidenced by bonds of the mortgagor, and to secure their payment executed a deed of trust to Samuel M. Jarvis, as trustee. This deed of trust included all of the property of the Canal Company which it then owned, all of its rights, franchises, and all and singular the canal or canals, ditches, flumes, reservoirs, etc., which thereafter the Canal Company might acquire, whether the same were then, or thereafter to be, constructed.

Afterwards, and in the month of February, 1890, the Canal Company entered into a contract with one A. S. Baker for the completion of its canal, and the building of a flume across Kiowa creek, which contract contains the following words :

" The contractor, party of the second part, hereby further agrees to waive and release, and hereby does waive and release to said company, all rights and claims of liens in any manner growing out of this agreement, or in any manner accruing against said canal property and every part thereof, and said contractor further agrees to warrant and defend said company against any and all liens and claims against

the property of said company accruing or to accrue in favor of all contractors or sub-contractors, material men and laborers for work and for material furnished to, in and through the said contractor for the use and benefit of said construction."

Other provisions pertinent to the present inquiry are:

" And the said company, party of the first part, hereby agrees to pay, or cause to be paid, to the said contractor in full for the work hereinbefore provided to be done, the whole sum of $15,500, the said sum to be paid at the times and in the manner following, that is to say:

"1. All bills for lumber, hardware and other material and supplies, together with freight added, upon presentation of original bills of purchase and freight bills, the same to be charged to said contractor on account of the aforesaid contract price.

"2. All labor bills upon presentation of certified pay roll with checks drawn to the order of payee, for which receipt in full shall be endorsed upon said pay roll at the time of payment; such payments to be made on the first day of each month on account of work done during the month next preceding; such amounts also to be charged to contractor on account of contract price.

"3. The balance of said contract price shall be paid to said contractor upon completion and acceptance of work by the said company, and the full discharge of all claims by any and every person whomsoever on account of doing work or furnishing material for the use and benefit of said construction and contract."

In the month of April, 1890, A. S. Baker sublet to his brother, F. E. Baker, the contract for building this flume, which in due course of time F. E. Baker finished, and the work was accepted by the Canal Company. This flume is on section 14, title to which then was, and still is, in the United States government, and the only interest in the land which the canal owner has is such as was obtained for a right of way by compliance with the laws of this state and the United States, referred to in the opinion.

The Clark-Brown Mercantile Company furnished lumber and material to the subcontractor for this flume, and afterwards, in due course of time, and in accordance with the mechanic's lien statute of this state, the subcontractors duly filed their liens upon default in the payment of the amounts due for the work done and material furnished.

. The Canal Company subsequently making default in the payment of this indebtedness to the Trust Company, the trust deed securing the same was duly foreclosed, and a sale of all its property, including this flume, and all of its canal on section 14, was made, and the property was bid in by one Beardsley, who was acting as agent for the Trust Company, the owner of all the bonds.

F. E. Baker assigned his claim and his rights thereunder to the State Bank of Fort Morgan, and to foreclose these liens the bank and the Mercantile Company, after the foreclosure under the deed of trust, brought separate suits in the district court of Morgan county, which, by consent of parties, were consolidated for trial.

All of the defendants suffered default except the Trust Company, the trustee under the trust deed, and Beardsley, the purchaser at the sale under the foreclosure. The case, as thus consolidated, was tried to the court without a jury, which, although making no specific findings of fact, found, generally, all the issues in favor of the plaintiffs, and rendered judgment against the Canal Company in favor of appellees for the amount of their claims and made these judgments a lien upon that portion of the canal upon which the work was done for which the liens were claimed, and made them prior to the lien of the trust deed, and prior to the rights of Beardsley, the purchaser under the foreclosure sale; from which decree the Trust Company, Beardsley and Jarvis, as trustee, appeal to this court.

Such additional facts as throw light upon the controversy, together with a statement of the contentions of the respective parties, are sufficiently set out in the opinion.

Messrs. TELLER, ORAHOOD & MORGAN and Messrs. BEARDSLEY & GREGORY, for appellants.

Messrs. ROGERS, SHAFROTH & WALLING and Mr. W. A. HILL, for appellees.

Mr. J. W. McCREERY and Mr. IRA J. BLOOMFIELD, *amici curiæ*.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

From the foregoing statement it will be seen that the controversy here is between a purchaser under the foreclosure of a trust deed containing a provision covering subsequently acquired property, and those claiming liens under the mechanic's lien statute of the state, whose rights accrued after the recording of the prior trust deed, on account of labor performed and materials furnished, which were wrought into, and thus combined brought into being, such property. The contractor makes no defense, and the only question involved is the relative priority of the trust deed and of the mechanics' liens.

The first position of the appellants is that the right of way upon which this flume was built became vested in the Canal Company when the latter filed its map, etc., in July, 1889. This right of way, it is said, was *in esse*, and covered by the trust deed long before the lien of the appellees attached. The argument is that under the act of congress of July 26, 1866 (Rev. Stats. U. S., secs. 2339, 2340), this right of way, being over government land, was confirmed to the Canal Company " as the same is recognized and acknowledged by the local customs, laws," etc., citing *Jennison v. Kirk*, 98 U. S. 453, *Broder v. Water Co.*, 101 U. S. 274, and other similar cases.

By section 1720, General Statutes 1883, as amended in 1887 (see Session Laws of 1887, p. 314), relating to the rights of those who build ditches and canals and appropriate waters of natural streams for purposes of irrigation, it is pro-

vided that the " priority of right of way, and water accordingly, shall date from the day named as the day of commencing work, otherwise, only from the date of the filing of the same;" that is, from the day of filing the map, statement, etc.   Hence, it is said, this right of way became vested as against the government, the owner of the servient land, from the day when the map, etc., were filed.

This we regard as not a correct construction of the statute. The priority given, both as to the right of way and the water, is as against other claimants of ditches and canals and appropriators of water from the same source of supply.   The language is general, and is as applicable to a private individual as to the federal government over whose lands the ditch is built.   But we apprehend it would not be contended that a right of way over the lands of a private individual, acquired by a canal owner for conveying water in his canal, became vested and fixed from the time of beginning work on the canal, but only from the time the right of way itself was purchased or conveyed.   So, also, where the right of way comes by operation of the grant contained in this act of congress.   It becomes vested only upon a compliance on the part of the canal owner with the local laws, customs, etc., and ownership is acquired as the work progresses, and the priority to the water, as well as the right of way, becomes vested only upon the completion of the work of construction, and the application of the water to a beneficial use.

Then, it is true, the right in both cases relates back as of the date when the work was begun, but this is only as against other appropriators of water from the same stream ; provided, also, the filing of the statement be made in the office of the state engineer, which was not done, as well as in the office of the county clerk and recorder, which latter was done. Hence, we conclude that the right of way of this canal did not become vested before the canal was finished, though it attached as fast as the ditch was constructed.   The most that can be claimed, which we might concede, is that the acquisition of the right of way and the attaching of the me-

chanic's lien are contemporaneous. *Garland v. Irrigation Co.*, 9 Utah, 350.

If, however, it could be held that this right of way became vested when the Canal Company filed its map and statement, under the evidence, and in accordance with the findings of the court, this flume was an entire structure and improvement, and when completed, though part of the general system of canals, was entirely disconnected and separate at both ends from other portions of the canal which had theretofore been constructed. This being true, in accordance with the provisions of section 2148, General Statutes of 1883, even though such right of way was included in the prior mortgage and the mortgage attached to the same before the appellees' lien attached, nevertheless the liens of the latter, as to the flume itself, have priority. Such legislation as this has repeatedly been held constitutional. See Phillips on Mechanics' Liens (3d ed.), sec. 238 ; *Brooks v. Railway Co.*, 101 U. S. 443 ; *Newark L. & C. Co. v. Morrison*, 13 N. J. Eq. 133 ; *Creer v. Canal Co.*, (Idaho) 38 Pac. Rep. 653.

As we understand the claim of appellants, it is that the right asserted is founded upon the provisions of section 1720, *supra*, and the amendments thereto. This contention assumes the validity of the statute, as to which we express no opinion, for that question is not before us. But if the right does so depend, a compliance with the provisions of the statute must be shown. The record, however, contains no evidence that the filings required were made with the state engineer. Such compliance not being shown, the right, if it rests upon the statute, is not established.

The next contention of the appellants, in a measure inconsistent, it may be said, with the first, is that the Canal Company did not own the land, or any interest therein, when the appellees began to do work and furnish materials for the flume thereupon built. A sufficient answer to this is that the statute gives a lien upon whatever interest the owner had when the work was begun, and to another or greater interest whenever acquired before the lien is enforced; and any person

having an assignable, transferable or conveyable interest or claim in or to any land, etc., shall be deemed an owner. Certainly the Canal Company had a possessory right or interest in this land at the time of the beginning of the work which was the subject of transfer; and whatever right it did have, inchoate and equitable, became absolute by the subsequent doing of this very work, and the furnishing of these materials, by the appellees.   *Garland v. Irrigation Co., supra.*

The third contention is that A. S. Baker, the contractor of the Canal Company, by express contract with the owner to that effect, waived his right to file a lien under the mechanic's lien act, and that the subcontractors are bound to know the terms of this contract, and they can claim no lien because their contractor waived it.   To this effect we are cited, among others, to the following cases:  *Bowen v. Aubrey,* 22 Cal. 566;  *Dersheimer v. Maloney,* 22 Atl. Rep. 813;  *Tebay v. Kirkpatrick,* 23 Atl. Rep. 318;  Phillips on Mechanics' Liens (3d ed.), secs. 117, 58, 62.   Other cases holding the same doctrine are:  *Nice v. Walker,* 25 Atl. Rep. 1065;  *Schroeder v. Galland,* 19 Atl. Rep. 632;  *McElroy v. Braden,* 152 Pa. St. 78.

Under the lien law of this state, which, as it is claimed, gives to a subcontractor an independent and distinct lien, irrespective of the right of the contractor thereto,—being, as it is argued, a creature of the statute, and not of contract,—there may be a question whether or not a contractor may, merely by his contract with the owner waiving his right to a lien, cut off the right of a subcontractor thereto.   There are decisions holding—at least intimating—that the statutory rights of a subcontractor cannot thus be destroyed.   *Clough v. McDonald,* 18 Kan. 114;  *Chicago Lumber Co. v. Woodside,* 71 Iowa, 359;  *Lonkey v. Cook,* 15 Nev. 58;  *Gull River L. Co. v. Keefe,* 41 N. W. Rep. (Dak.) 743;  *Albright v. Smith,* 51 N. W. Rep. (S. D.) 590;  *Laird v. Moonan,* 32 Minn. 358;  *Hall v. Mullanphy Planing Mill Co.,* 16 Mo. App. 454.

But we have not such a case before us, notwithstanding the insistance of the appellants to the contrary, and we ex-

press no opinion as to the power of a contractor, under our statute, to waive a subcontractor's right to file a lien. The contract here between the owner and the contractor must be taken in its entirety. While the owner is not here insisting that the subcontractor has no right to file a lien, the purchaser at the sale under the prior trust deed is in a position to question and attack the validity of the liens of appellees.

The waiver of this statutory right must clearly appear either by express agreement to that effect, or by necessary implication from the language of the contract. *Evans v. Grogan*, 25 Atl. Rep. 804; *Taylor v. Williams*, 23 Atl. Rep. 1134. If there is any doubt about the meaning of the contract, the construction which the parties thereto themselves put upon it may be resorted to by the court, and of this the prior mortgagee or purchaser at the sale under the incumbrance cannot complain. These different provisions of the contract quoted in the statement, taken together, show that the right to file a lien, certainly by the subcontractor, was not waived or lost. The most that can be said is that by implication from the language used the contractor himself agreed not to file a lien for himself, and the first sentence of the first provision quoted, if it stood alone, might be so construed; but it is immediately followed by an agreement upon the part of the contractor to warrant and defend the owner against all liens that may accrue in favor of subcontractors and material men, thus recognizing that such liens of subcontractors might accrue and be filed, and be binding against the owner, and thus indicating that the limitation as to filing liens was intended to apply, if to any one, only to the contractor. That the owner so considered is evident from the precaution which it took to insert in the contract as a security against liens that no payments could be required of it until all bills for labor done and materials furnished for the canal should be presented to it by the contractor on the first of the month succeeding that in which the work was done and materials furnished, duly receipted and paid, and that the amounts

thereof should be charged against the contractor upon his account with the owner.

If the contractor waived the lien as to subcontractors, why the necessity of requiring receipted bills from them before the owner paid the contractor? As if to make still more emphatic this understanding, and still further to protect the owner against liens that might be filed by the subcontractors, a bond, saving harmless the owner from all labor bills, was given to it by the contractor. It is clear to us that it never was intended either by the contractor or the owner that the subcontractors might not file a lien as security for the payment of their claims.

Conceding that the flume and the right of way are property acquired subsequent to the execution of the trust deed, it is further contended that as soon as they came into being the lien of the mortgage attached to them free from the lien of these subcontractors. That subsequently acquired property may become subject to the lien of a mortgage, if apt words covering it are inserted in that instrument, is well settled, especially in the federal courts; and such lien attaches when the property comes into being, and, in general, is superior to any subsequent incumbrance. See Jones on Mortgages (5th ed.), sec. 149, and cases cited.

It is, however, equally well settled that "the mortgage attaches to the property in the condition in which it comes into the mortgagor's hands." "Thus a mechanic's lien for work done and materials furnished on such after-acquired property takes precedence of the mortgage." 1 Jones on Mortgages, sec. 158; Phillips on Mechanics' Liens, sec. 242; *Williamson v. N. J. Southern R. R. Co.*, 28 N. J. Eq. 277, 29 N. J. Eq. 311; *United States v. New Orleans R. R. Co.*, 12 Wall. 362; *Hall v. Planing Mill Co.*, *supra*.

This flume and the right of way, as has been said, were brought into being—were created—by the work which was done and the materials which were furnished by the appellees, for which they now claim these liens. At the very moment these improvements—this property—thus came into

the hands of the Canal Company, the mortgagor, the right of the appellees to file liens attached, and subject thereto, the property passed under the provisions of the mortgage. Most inequitable would it be to hold that the property, which owes its very existence to the labor done and materials furnished for which liens are claimed, should pass under the control of the mortgage, free from these liens.

The evidence is, and the trial court must have so found, that this flume was an entire and independent improvement, and, in addition to the reasons which have already been given, if the improvement was a separate and entire structure, the lien of the appellees as to the flume itself would, under our statute above referred to, take precedence of the prior trust deed, and it might be removed from the land after a sale upon an execution.

The only other point pressed in argument is that as the contractor failed to perform his contract, no right to a lien, either of the contractor or subcontractor, exists. To this it is sufficient to say that the assumption is not borne out by the evidence, but is contrary thereto. But, if true, the subcontractors, under the facts of the case, are entitled to what the work done and the materials furnished are reasonably worth, after deducting any claims for damages for the alleged nonperformance by the contractor, and we must uphold the findings of the trial court in this particular. *Morehouse v. Moulding*, 74 Ill. 322; *Wright v. Roberts*, 43 Hun, 413; *Whittier, Fuller & Co. v. Blakely*, 13 Ore. 546.

Upon the whole case, we think the judgment should be affirmed, and it is so ordered.

*Affirmed.*