Morgan,-J.
On rehearing; former opinion withdrawn and the following substituted.
Writ of error to reverse a judgment of the Weld district court in an action against the Sugar Company, hereinafter called the owner, and its principal, contractor, Eggleston, to foreclose a mechanic’s, lien upon a building which the contractor agreed, orally, to construct for the owner, purchasing his material from the Lumber Company, hereinafter called the claimant,r and which filed its lien statement, and began this action, within the required time thereafter. The lien law of 1899 is involved’ No evidence was abstracted. There is some controversy over service by publication on . the principal- contractor, and default thereupon, but the principal- contention is'over the court’s ruling on two1 general demurrers — one to the complaint overruled, one to the answer sustained.
The owner contends that, in case of a contract between the owner and contractor, regardless.of the amount of the contract price,-sub-contractors and material men, *3 in order to maintain a lien for any more than may he owing to the contractor when the lien statement is filed for record, mnst serve on the owner a written notice that they have performed labor or furnished material, etc., independent of the service’ on the owner of a copy of the lien statement; and claims the right to pay the contractor, in the absence-of such notice, or until such notice is served, at such times as the contract may provide, and, in full, at the expiration of thirty-five days after the completion of the contract, if no such notice has been served prior-thereto. The claimant contends that no such notice is required, in any case, 'if the contract price is $500.00, or less, and, as a broader contention, not in any case, unless the contract or a memorandum thereof is filed with the county recorder. • ’
These contentions must be determined from the lien act of 1899, and particularly from sections one and two, being sec. 4025 and 4026, of the Eev. Stat., 1908.
See. 4025, after providing, generally, that mechanics, sub-contractors and material men, although dealing with the contractor alone, have a lien upon the property of the owner benefited, states:
“In case of a contract for the work, between the reputed owner and a contractor, the lien shall extend to the entire contract price and such contract shall operate as a lien in favor of all persons performing labor or services or furnishing materials as herein provided under contract, express or implied, with said contractor, to the extent of the whole contract price1; and after all such liens are satisfied^ then as a lien for any balance of such contract price in favor of the contractor. All such contracts- shall be in writing when the’ amount to be paid thereunder exceeds five hundred dollars, and shall be subscribed by the parties thereto, and the said contract, or a memorandum thereof, setting forth the names of all the parties to the contract, a description of the property *4 to be affected thereby, together.with a statement of the general character of the work to be done, the total amount to be paid thereunder, together with the times or stages of the work for making payments, shall, before the work is commenced, by the owner or reputed owner be filed in the office of the county recorder of the county where the property, or the principal portion thereof, is situated; and in case such contract is not filed, as above provided, the labor done and materials furnished by all persons aforesaid before such contract or memorandum is filed, shall be deemed to have been done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof.”
Sec. 4026, after providing that the contract must provide for payments in installments after work is begun, that 15 per cent must be held for 35 days after the completion, that any payments made prior to dates set shall not affect liens of sub-contractors and material men, that as to them the amount of the contract shall be paid in money and shall not be affected by any indebtedness of the contractor to the owner, states:
“In case such contracts and alterations thereof do not conform substantially to the provisions of this section, the labor done and materials furnished by all persons other than the principal contractor shall be deemed to have been done and furnished at the personal instance and request of the person who contracted with the principal contractor, and they shall have a lien for the value thereof. Any of the 'persons mentioned in section 1," except a principal contractor, may at any time give to the owner or reputed owner or to his superintendent of construction, agent or architect, a written notice that they have performed labor or furnished materials or both to or for a principal contractor, or any person acting by authority of the owner or reputed owner, or that they have agreed to and will do so, stating in general terms *5 the kind of labor or materials and the name of the person to or for whom the same was or is to be done or performed, or both, and the estimated or agreed amount in value, as near as may be, of that already done or furnished or both, and also of the whole agreed to be done or furnished, or both. Such notice may be given by delivering the same to the owner or reputed owner personally, or by leaving at his residence or place of business with some person in'charge; or by delivering it either to his superintendent of-construction, agent or architect, or by leaving it either at his residence or place of business with some person in charge; no such notice shall be invalid or insufficient by reason of any defect of form,- provided it is sufficient to inform the owner or reputed owner of the substantial matters herein provided for, or to put him upon inquiry as to such matters. Upon such notice being given, it shall be the duty of the person who contracted with the principal contractor, to, and he shall withhold from such principal contractor, or from any other person acting under such owner or reputed owner, and to whom, by said notice, the said labor or materials, or both, have been furnished or agreed to be furnished, sufficient money due or that may become due, to said principal contractor, or other persons, to satisfy such claim, and any lien that may be filed therefor for record under this chapter, including reasonable costs provided for in this act; and the payment of any such lien, which shall have been acknowledged by such principal contractor, or other person acting under such owner or reputed owner, in writing to be correct, or which shall have been established by judicial determination, shall be taken and allowed as an offset against any moneys which may be due from the owner, or reputed owner to such principal contractor, or the person for whom such work and labor was performed.”
Sec. 4033 provides that a lien statement must be filed for record, and that sub-contractors and material men *6 must file such statement within two months after completion of the building, and serve a copy of the same upon the owner at or before the time of filing.
The provisions for filing the contract, service of notice, etc., were added to the law of 1889 by the act of 1893, and retained in 1899, to enable the owner to limit his liability to sub-contractors and material men and to protect himself from the broad provisions of the law of 1889 and, with few changes, retained in the law of 1893 and 1899, which gave them a direct lien, regardless of the state of the account, except the limitation to the contract price, between the owner and his contractor. By filing his contract or a memorandum, as the law of 1893 and 1899 provides he may do, the owner may pay the contractor, in installments by the terms and provisions thereof, without fear of liens, unless the sub-contractor give him written notice of intention, or, as the statute says, written notice that he has “performed labor or furnished material,” * * * “or agreed to and will do so.”
If the owner fail to file the contract, or memorandum, as the law provides he may do, or, if the law does not require it to be filed, as in instances where the contract price is $500.00, or less, then, in either instance, there is no way for the owner to so limit his liability. • The owner in order to profit by these provisions in his behalf must have a written contract; provide in it that payments will be made in installments at times named, that nothing shall be paid in advance of the work, that at least 15 per cent of the price shall be made payable at least 35 days after completion of the contract; and then file it, or a memorandum thereof, so that sub-contractors and material men may know that he intends to avail himself of the privilege given.
It has been held in the case of Willamette Co. v. Los Angeles Co., 94 Calif., 229, 37 (29 Pac., 625), that,
“Where the owner does not choose to avail himself *7 of the mode of limiting his liabilities provided in this section, labor done and materials furnished shall be deemed to have been done and furnished at his personal instance. ’ ’
In Small v. Foley, 8 Colo. App., 435, 451; 47 Pac., 64, 70, the court said:
“It seems manifest that the provision (as to notice) was intended for the owner’s personal benefit.” .
Our statute gives to sub-contractors and material men a direct lien, regardless of the state of the account between the owner and the contractor, subject only to the aforesaid provisions in the first two sections of the act, which extend (not reserve) to the owner a mode of limiting his liability.
The contention that under the constitution and the common law the owner may pay his contractor as he may choose, regardless of a sub-contractor’s right to a lien, is recognized by our statute only .to the extent of the privilege granted in the provisions aforesaid. Prior to the law of 1889, the owner’s claim in this respect received greater consideration at the hands of our legislature than since that time. By the law of 1889, amending prior laws, no consideration or recognition whatever was given to it, but all provisions concerning notice of intention were eliminated, and all the sub-contractor or material man was required to do was to file his lien statement for record and serve a copy on the owner, at or before the filing, and bring his suit to foreclose within the time required. The 1889 act, leaving no room for critical construction, provided, as to sub-contractors, that:
“Any payments made by the owner to the contractor, either before or after making such contract, or during the erection of such building and during the time provided in which to file liens, shall be at the risk of the owner; and no such payment shall be a set-off against the claim of any sub-contractor who shall file his state *8 ment for lien and serve a copy thereof, as herein provided.”
An examination of the amendments of 1889 discloses a studied and effective determination to eliminate every feature of what is known as the New York system of •mechanic’s lien statutes from our law, and to substitute what is known as the Pennsylvania system; the former making the sub-contractor’s lien subject to the state of the account between the owner and his contractor, the latter disregarding it, both-subject to modifying provisions in the statutes of the different states, following one or the other.
This 1889 act, and all acts prior thereto, were repealed in 1893 by another entire lien act which re-enacted many sections of the prior law, but again introduced features of the 'New York system, shown in sections 4025 and 4026, supra. This 1893 act is the same as the 1899 act, now under consideration, with slight modifications.
It is concluded for reasons hereinafter stated that the claimant had a lien regardless of notice to the owner or reputed owner, or state of the account between the owner and contractor, unless the owner or reputed owner •filed his contract and otherwise availed himself of the •privilege extended by' the statute; claimants limited, of course, to the contract price. Therefore, it was not error to overrule the demurrer to the complaint and leave the owner to plead in its answer the matters, if any, relieving it from liability. The owner answered, pleading the same matters involved in the demurrer to the complaint, that: the contract between it and its contractor was verbal, for $310.00, that it had paid him in full, in good faith, under the terms of the contract, without notice that the claimants had furnished material or intended to claim a lien, or that the contractor had not paid for the materials furnished. A general demurrer to this answer raised the same contention that arose on the demurrer to the com *9 plaint, and for the same reasons it is concluded the court did not err in sustaining it.
It is only where the contract or a memorandum is • required to he in writing and to he filed that any privilege is extended to the owner whereby he may limit his' liability, except the limitation on claimants to the contract price. In this case the contract was not in excess of $500.00, was not filed and the statute did not require it to be filed. All contracts of $500.00, or less, are governed and controlled under the general provisions of the lien act giving the claimant a direct lien to the full extent of the contract price, regardless of the state of the account between the owner and the contractor, and regardless of payments made before the time expires fo¥ filing the lien statement.
The owner’s contention that the provisions of sections 4025 and 4026 are privileges granted to material men and other sub-contractors, and that they must comply with the requirements thereof in all cases where there is a contract, although the owner is not required to file the same, and thus furnish the data upon which the claimant may rely, is contrary to the spirit of an act to “secure liens to mechanics and others,” and not in accord with the trend of recent decisions of the supreme and appellate courts of this state, construing the same.
It may be assumed, but it is unnecessary to decide, that where the contract exceeds $500.00, is in writing and otherwise complies with the law, and it, or a sufficient memorandum thereof is filed, it is necessary for a subcontractor to serve a notice upon the owner in order to maintain a lien upon the property for any more than what may be unpaid by the owner on the contract when a copy of the lien statement is served and the statement itself is filed for record; but.it is concluded that if the contract is for $500.00 or less, or, if for a greater sum, and is not in writing, or otherwise not in compliance with *10 law, or it, or a sufficient memorandum thereof, is not filed, then, and in either such case, no notice is necessary, and all payments to the contractor are at the owner’s peril if made prior to the expiration of the time given for the sub-contractor to serve and file for record a statement of the lien. And, as the answer in this instance relied upon a necessity of notice, but alleged that the amount of the contract price was less than $500.00, it did not state a good defense.
Prior to the act of 1889 the sub-contractor was required to give notice of an intention to claim a lien with no exception as to amount of the contract, the contract was not required to be in writing or to be filed, and he could not maintain a lien unless at the date of his notice of lien or of his intention to file the same, “there was something due or to become due from the owner to the. contractor.” — Jensen v. Brown, 2 Colo., 694 (Law of 1872); McIntyre v. Barnes, 4 Colo., 285 (Law of 1872); Epley v. Sherrer, 5 Colo., 536 (Law of 1876); Tabor v. Armstrong, 9 Colo., 285, 12 Pac., 157 (General Laws of 1877); Greeley S. L. & P. R. R. Co. v. Harris, 12 Colo., 226, 20 Pac., 764 (Law of 1881); Spangler v. Green, 21 Colo., 505, 42 Pac., 674, 52 Am. St., 259 (Law of 1883).
As above stated, in 1889, ' the lien statute was amended, repealing and amending all sections of the prior act requiring notice of any kind except the copy of the lien statement to be served on the owner at or before the time of filing the statement for record. And all payments made before the time expired for such filing were at the owner’s peril. — Spangler v. Green, supra; Jarvis v. State Bank etc., 22 Colo., 309, 316, 45 Pac., 505, 55 Am. St., 129 (Law of 1889); Sayre-Newton Lumber Co. v. Union Bank, 6 Colo. App., 541, 546, 547, 550, 41 Pac., 844 (Law of 1889).
Prom an examination of these authorities in connection with the lien act of 1889, it appears that the pro *11 visions of that act are fully recognized, giving sub-con-' tractors direct liens, without regard to the state of the account between the owner and his contractor. The law of 1893 and 1899 gives the sub-contractor and material man the same direct lien limited only to the amount of the contract price; but incorporates, by sections 4025 and 4026, certain provisions whereby the owner, on complying therewith, may pay the principal contractor as the work progresses. This is a departure from the lien law prior to 1889, and eliminates the former legal conception that sub-contractors and material men’s liens were subject to the state of the account between the owner and his contractor, on the contract between them.
There are two distinct conceptions of the right to a sub-contractor’s lien recognized by the statutes of the various states, one, that such liens are allowed by statute through a species of equitable subrogation to the contract between the owner and his contractor; the other, becáuse of the enhanced value of the property caused by the labor and material so contributed to it by the consent of the owner through his contractor, made his agent by statute. The latter is the conception adopted in the law of 1889 and continued in the law of 1893 and 1899, and illustrated by the following authorities. The latest announcement in this state is in the case of Curtis v. Nunns, 54 Colo., 554, 556, 131 Pac., 403, 404, wherein Scott, J., said:
“It would be a singular state of the law if Curtis, the owner, could, by words of acceptance addressed to his principal contractor, with no recorded contract to guide sub-contractors, thus change the actual time of completion, and in this way defeat the honest claim of a sub-contractor. ’ ’
The provisions of 4025 and 4026, supra, do not change the' theory or policy of the law of 1889 in this respect, but continue it, as held in the case of Chicago Lumber Co.
*12 v. Newcomb, 19 Colo. App., 265 to 275, 74 Pac., 786, where it is said:
“The construction of a building involves the cooperation of a variety of agencies. It is not built by the original contractor himself. It is true that he undertakes its construction, but to enable him to execute his contract, he must rely to a greater or less extent upon others. The accomplishment of the work requires the purchase of material and the employment of mechanical and other labor, of all of which the owner receives the benefit. The purpose generally of laws providing for mechanics ’ liens is to afford some measure of security to those whose property and services have entered into the improvement ; and such laws have, as a rule, been upheld by the courts. * ■* * It does not impair the obligations of contracts, but provides a method for securing payment to- those whose labor or material goes into the building, and at the same time protects the owner and contractor, if the provisions of the act are complied with. The doctrine upon which such liens are founded is the consideration of natural justice' that the party who has enhanced the value of the property by incorporating therein his labor or materials shall have a preferred claim, in a certain sense, on such property, for the value of his labor or materials. * * * The foregoing sections provide the form of contract which must be entered into by the owner and the principal contractor to enable the latter to secure a lien for himself, and to enable the former to confine the liabilities to which his property may be subjected, to the contract price. * * * By virtue of the law the contractor is invested with the power to charge the property for the reasonable value of the labor and materials supplied to it by sub-contractors. The right of lien arises from the statute, which applies by its own force, to- every transaction that parties, by their voluntary action, bring within its terms. No 'one is deprived *13 thereby of the gains of his own industry. The legislative purpose is quite the contrary. It is rather to prevent one man from enjoying, without compensation, the gains of another’s industry in circumstances which the law-makers regard as imposing a duty on the former to see that the latter is paid therefor. * * # Without express provision, the contractor would possess the powers of an agent. It is in virtue of his power to incumber the property by procuring material and labor that the right to a lien accrues to persons furnishing him with those things. In O’Neil v. St. Olaf’s School, supra [26 Minn., 329, 4 N. W., 47], it is said that ‘the statute gives as an incident to a contract for erecting, altering or repairing a house, power to the builder or contractor to charge the house and the land with debts for labor and materials incurred by him in performing the contract. The owner consents to this power conclusively and irrevocably, so far as others than the builder or contractor are concerned, by making the contract while such is the law. ’ See also Laird v. Moonan, 32 Minn., 358 [20 N. W., 354].”
In the case of Lindeman v. Belden C. M. Co., 16 Colo. App., 342, 346, 65 Pac., 403, 404, it is said, also:
“The leading idea of mechanic’s lien statutes, the basic principle upon which they are founded, the object which they seek to subserve, and to which all their provisions tend, is to secure the mechanic and material man upon values they have directly contributed to create — to give to such, who by their labor and material have enhanced the value of property, the security of a lien thereon, to the extent they have thus added to its value. — Barnard v. McKenzie, 4 Colo., 253; Boisot on Mechanics’ Liens, sec. 7; Phillips on Mechanics’ Liens, secs. 9-13.”
In the case of Sierra N. L. Co. v. Whitmore, 24 Utah, 130, 66 Pac., 779, and Carey-Lombard Lumber Co. v. Partridge, 10 Utah, 322; 37 Pac., 572, it is held under a statute requiring notice of intention to claim a lien besides the *14 .filing of the lien statement hy sub-contractors, that the owner is charged with notice as of the date of commencing to work or furnishing materials by sub-contractors, of their lien, by virtue of the original contract, together with the statute making the lien relate back to the commencement of the work or the furnishing of materials by the sub-contractors; and that the notice of intention refers only to sub-contractors who intend in the future to do work or furnish materials, and not to those who are furnishing or have furnished .the same. In the case of Gilchrist v. Anderson, 52 Iowa, 274, 13 N. W., 290, it is held that if the owner knew that material was obtained from someone by the contractor, that such knowledge put the owner upon inquiry and that no notice was necessary of intention to claim a lien. These cases serve to illustrate that the courts desire to uphold the direct provisions of a lien given to sub-contractors and material men.
It is unnecessary to cite further authorities so construing lien statutes favorable to sub-contractors and material men, but the following may be consulted: 2 Jones on Liens, sections 1304 et seq., 27 Cyc., 89 et seq.; Jones v. Great Southern Hotel Co., 86 Fed., 370, 30 C. C. A.; 108; Hightower v. Bailey et al., 108 Ky., 198, 56 S. W., 147, 49 L. R. A., 255, 94 Am. St., 350; Laird v. Moonan, 32 Minn., 358, 20 N. W., 354; Colter v. Frese et al., 45 Ind., 96; Henry-Coatsworth Co. v. Evans, 97 Mo., 47, 10 S. W, 868, 3 L. R. A., 332; Aste v. Wilson, 14 Colo. App., 323, 59 Pac., 846.
In the case last cited the court, in considering the law of 1893 with reference to liens of sub-contractors, suggests, without deciding, that the 'lien statute of 1893 gives a direct lien to such persons, and calls attention to the case of Jarvis v. State Bank, supra, in which the -supreme court expresses the view that a sub-contractor’s .right to a lien cannot be' cut off and destroyed by the *15 terms of the contract between the owner and the principal contractor; both opinions citing the following cases-upholding the direct lien theory of our statute: Clough v. McDonald, 18 Kan., 114; Chicago Lumber Co. v. Wood-side, 71 Iowa, 359, 32 N. W., 381; Lonkey v. Cook, 15 Nev., 58; Gull River L. Co. v. Keefe, 6 Dak, 160, 41 N. W. Rep., 743; Albright v. Smith, 2 S. D., 577, 51 N. W. Rep., 590; Laird v. Moonan, supra; Hall v. Mulamphy P. M. Co., 16 Mo. App., 454.
The decisions to the contrary upholding the first theory aforesaid are numerous, strong and conclusive, but under statutes favoring the owner and following the New York system. See 2 Jones on Liens, supra; 22 Cyc., supra, and the case of French v. Bauer, 134 N. Y., 548, 32 N. E., 77, 20 L. R. A., 560, and extended note.
Preliminary to the final question involved herein the question may be considered whether the acts of 1893 and 1899 so changed the law of 1889 as to shift the burden of watchfulness back to the sub-contractor and material man as it was prior to 1889; or, whether by those later acts, such burden was left upon the owner as in 1889, except as to the provision granted to the owner in sections 4025 and 4026, by complying with which he could thereby shift such burden to the sub-contractor and material man, so that they would have to serve their notice of intention upon him. The latter is the more reasonable. . The first paragraph of section 4025 gives a direct' lien in plain language. In the second paragraph it is provided, “in case of a contract,” such lien is limited to the contract price whatever it may be; then follows the' privilege given the owner to make payments as the ..work progresses by making the contract as provided and by putting it in writing and filing it; then, the owner having done this and thus given the data to the claimant, a privilege is thereafter given the claimant, whereby he may stop those payments or enable the owner to do so, by *16 serving on him the notice, upon which the owner must protect himself by retaining the money necessary to satisfy the claim or the subsequent lien.
Now, the vital- question in this case is reached as to the claim of plaintiff in error that, as alleged in the answer, because the contract was for less than $500.00 it could, and did, in good faith, pay the contractor, in full, according to the contract, no notice of intention being served upon it by the claimant, or lien filed, before the payment was made. In other words, it is contended that the claimant must serve the notice, and do so before the owner pays the contractor, even though the contract is-not in writing, and not filed and no other notice of it or its contents, amount, dates of payments, etc., is given to the claimant, so that he may know when to serve the same, and whether it will avail him anything if he should serve it. It is true that he could inquire as to the contract and possibly ascertain in some way what it contained, but his information so obtained would not be. so unchangeable and certain as the filing would give him, in case he succeeded in obtaining any information at all. The law would not force such uncertainty upon him. The very purpose of the requirement as to filing the contract or a memorandum is to- give notice to a claimant so that he may act intelligently in reference to serving the notice on the owner. Such purpose plainly appears from the quotation, supra, from the case of Curtis v. Nunns, and also from the following from the case of Chicago Lumber Co. v. Newcomb, supra:
“The purpose of recording the contract prescribed by the statute is to advise persons dealing with the contractor of its contents, so that, as they have no remedy against the property for claims in excess of the contract price, they may act intelligently and be able to determine whether the security is sufficient to justify them in parting with their material or expending their labor. It is *17 asserted that the cross-complainants had such knowledge of this contract; and if it had been a. contract for the recording of which the statute provides, it may be that their knowledge would take the place of a record. But it was not the contract to which the requirement was intended to apply. The contract to be recorded is a contract, the terms of which are contained in the statute.”
It would seem, therefore, that, if by the statute no notice from the owner is required, so that the sub-contractor may act intelligently, then it was intended that no notice is required from the sub-contractor to the owner; and, as the statute does not require the contract to be filed in cases where it is $500.00 or less, then the sub-contractor is not required to serve a notice in such case. Hence, the contention of appellant, owner, is untenable that it may have a contract of $500.00 or less, not in writing, and no memorandum filed or other notice given of it, yet, the claimant must, nevertheless, gain his intelligence to guide him from some other source and serve the notice the same as if the contract was in writing and filed. It must be assumed that the legislature intended that in ease of small contracts of $500.00 or less, or where there was none, that the owner must protect himself from liens of sub-contractors and material men as he was required to do, in all cases, by the law of 1889, from the commencement of building up to the last day of filing for record the lien statement. It seems plain, also, from the phraseology of all that part of sections 4025 and 4026 following the requirement that all contracts over $500.00 shall be in writing, that such part refers only to written contracts, that is, contracts over $500.00; and that the written notice required therein refers only to written contracts. As suggested by Scott, J., in the case of Curtis v. Nunns, supra, it would be a strange requirement of the law that a sub-contractor should be required to give a written notice of intention *18 to claim a lien when the contract between the owner and his contractor is not required to be in writing, not required to be filed, nor any other requirement made of the owner to furnish data upon which the sub-cóntractor could act, and at the same time destroy his right to a lien if he should fail to act intelligently, or within the proper time.
Such is the only reasonable construction of this statute, fair between the owner and the sub-contractor, unless it be held, according to the broader contention of the defendant in error, the claimant herein, that even contracts of $500.00 or less, or a memorandum thereof if oral, should also be filed by the owner. Though the latter construction may appeal to the legal mind, it cannot be said that such was the intention of the legislature, because, if so intended, it would not be necessary to separate such contracts into two classes; furthermore, our courts are more or less committed against it, as shown from the cases of Curtis v. Nunns, supra, at p. 557, and Foley v. Coon, 41 Colo., 432, 435, wherein the opinion indicates that “in certain cases” only must contracts be filed.
It is contended that, as the supreme court of California, under a similar statute, from which it appears our statute was derived, has held, prior to our adoption of it, that the sub-contractor must serve on the owner the notice of intention in all contracts, whether oral or in writing, and regardless of the amount thereof, therefore, our courts should follow such California decisions. The following reasons are given for not following the California construction.
First. The courts of that state have continuously followed the New York system and held that sub-contractors’ liens are subordinate to the state of the account between the owner and the contractor under statutes of that state similar in all material respects to our statute *19 of 1889, while our courts in construing that statute have followed the Pennsylvania system, and held the contrary. Prior to 1885 the lien statutes of California, hack as far as 1872, were practically the same as our statute of 1889, giving a direct lien to sub-contractors, not requiring the contract to be in writing or to be filed, and not requiring any notice of intention; yet, its court held that, even under those statutes, the owner could pay the principal contractor according to his contract, and that the sub-contractor’s lien was limited to whatever might still be owing at the time the lien statement was required to be filed by the sub-contractor. — Wiggins v. Bridge, 70 Calif., 437, 439, 11 Pac., 754; McCants v. Bush, 70 Calif., 125, 126, 11 Pac., 601. Our courts, on the contrary, have duly recognized the legislative enactment of 1889 and have held that under that act the owner could not pay the contractor, except at his peril, until after the time expired for the sub-contractor to file his lien statement; and when such lien statement was filed the lien related back to the commencement of the work and extended to the full amount of the contract price, regardless of the payments made by the owner to the contractor. — Spangler v. Green, 21 Colo., 505, 509; Jarvis v. State Bank, 22 Colo., 309, 316; Sayre-Newton Lumber Co. v. Bank, 6 Colo. App., 541, 549. Furthermore, in the case of Aste v. Wilson, 14 Colo. App., 328, the court, construing the decision of Bowen v. Aubrey, 22 Calif., 566, said:
“In that case it was held that the sub-contractor knew that there was a contract between the owner and the .general contractors, and this was sufficient to put him upon inquiry, and he was to be considered as affécted with notice of the contents and stipulations of this contract. In that case, also, the original contractor had expressly by his contract waived his own right to file a lien, and the court said that the sub-contractor had no higher rights than the original contractor. How far these considerations affected the decision does not appear.
*20 “In a subsequent case, Dore v. Sellers, 27 Calif., 594, tbe court, speaking of tbe right which the employes of a contractor have to assert a lien under the statute, said, that they had the right, not for the reason that the employer’s property had been benefited by the labor or material furnished by the employes, but because they had furnished the labor or material for the contractor to whom the law had granted a lien for the amount which became due to him under the contract in consequence of their labor and material. It would seem, therefore, that under the statute of that state, as construed by the supreme court, that the lien of a sub-contractor or other employe was not direct, but depended upon the contract of the owner with the principal contractor.”
In the same case the court, referring to Jarvis v. State Bank, supra, says that the court in that case intimates quite strongly that there may be serious doubt as to the soundness of such doctrine in this jurisdiction; the court then cites several cases following the Pennsylvania system contrary to the California doctrine.
• It would be expected, therefore, that the California courts would construe the 1885 law-of that state (which is the law from which sections 4025 and 4026, supra, were derived) in conformity with their previous decisions; but, considering the opposite view taken by our courts of the same kind of a law, it would not be expected that they would now adopt the view of the California courts in construing said sections.
Second. The doctrine in California so construing the law of that state to 1885 has been repudiated by the courts of several states that had adopted such statutes, and they have held that the sub-contractor’s lien under such statute was not subject to the state of the account between the owner and his contractor and have distinctly refused to follow the California construction. — Hunter v. *21 Truckee Lodge, 14 Nev., 24; Merrigan v. English, 9 Mont., 113, 22 Pac., 454, 5 L. R. A., 837; Spokane v. McChesney, 1 Wash., 609, 21 Pac., 198; Hobbs v. Spiegelberg, 3 N. Mex., 222, 5 Pac., 529; Allen et al. v. Redward, 10 Hawaii, 151, 156.
The courts of those states have, like the courts of this state, construed a similar law to ours of 1889 and California’s prior to 1885 differently from the California courts, although those states had adopted the California law existing prior to 1885. It would he natural for our courts to continue in their own footsteps and in the footsteps of the courts of other states traveling the samé highway. It is true those other states have not adopted the California law of 1885, as this state has done, by taking from it sections 4025 and 4026, supra, and they have not therefore construed the provisions of these sections, but it is safe to say, from their foregoing decisions, that if ever called upon they would construe such provisions the same as construed herein. Our court will now be the first outside of California to construe them.
•The first construction of these provisions by the California courts occurred in September, 1890, less than three years prior to our adoption of them, in the case of Kerchoff-Cusner Co. v. Cummings, 86 Calif., 22, 24 Pac., 814 (three judges out of seven dissenting). The opinion was based wholly upon a former opinion that did .not warrant the advanced view announced; the construction in that case, however, has been followed since, with it as a precedent.
The following quotation is given from the opinion in the Kerchoff case to show the California construction: “no part of the contract price under such a contract ($1,000.00 or less, $500.00 or less in Colorado) need be withheld .by the reputed owner; and he may pay the whole of it to the contractor before the commencement or after *22 the completion of the work, unless the notice prescribed is given.”
It will he seen that such construction is that no part of sections 4025 and 4026, following the provision as to contracts necessary to be in writing, applies to contracts of $500.00 or less, except the provision requiring notice to be given by a sub-contractor and material man. What good would notice do if the owner could pay the contractor in full before the commencement of the work? And why should the burden of these requirements be sustained by the sub-contractor in all cases and the owner be relieved therefrom where the contract is $500.00 or less? Such construction practically deprives a sub-contractor and material man of any lien where the contract price is $500.00 or less. It is contrary to the spirit and purpose of such lien laws, and contrary to the general view of our courts.
Furthermore, the incorporation of these two sections into our lien law, then existing, must be construed in harmony with the entire law and the general policy and purpose thereof in this state, and not necessarily in conformity with the decisions of another state following-lines parallel with a different view and a different system. The conclusions herein reached meet the demands of justice so that liens may be had by sub-contractors and material men when the contract is for $500.00 or less the same as when it is for a greater sum, without requiring them to give a prescribed written notice without any certain information or recorded data upon which to rely; especially so, as our statute does not require the owner to retain the fifteen per cent of the contract price until after the date for filing the lien statement as the California law requires.
In regard to the owner’s contention concerning personal service upon the contractor and the-necessity of a personal judgment against him, it is concluded that the *23 constructive service bad and provided by tbe lien act was sufficient to enforce the lien; and that tbe publication of tbe alias summons was without substantial injury to tbe owner.

Judgment Affirmed.